United States District Court
Northern District of California

ALEKSANDR L. YUFA,

        Plaintiff,

    v.

TSI INCORPORATED, et al.,

        Defendants.

Case No.: CV 09-01315-KAW

ORDER GRANTING DEFENDANT TSI INCORPORATED'S MOTION FOR SUMMARY JUDGMENT

(Dkt. No. 152.)

On March 25, 2009, Plaintiff Dr. Aleksandr L. Yufa filed this action alleging that Defendant TSI Incorported's predecessor-in-interest infringed on U.S. Patent No. 6,346,983 ("the '983 Patent"). On December 12, 2013, Defendant filed its motion for summary judgment. (Dkt. No. 152.)

Upon review of the parties' papers and having carefully considered their arguments and the relevant legal authority, the Court finds this matter suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b), and GRANTS Defendant's motion for summary judgment for the reasons set forth below.

## I.   BACKGROUND

Plaintiff Dr. Aleksandr L. Yufa is an inventor, who has applied for and acquired five separate U.S. patents. Filed on January 29, 1998, and entitled "Methods and Wireless Communicating Particle Counting and Measuring Apparatus," the '983 Patent, which is at the center of this lawsuit, concerns the methods and devices for determining the existence, size, and quantity of airborne particles by utilizing a light beam. '983 Patent col. 1 l.5-10. As originally issued, the '983 Patent contained eight claims in total.

Plaintiff filed this action on March 25, 2009, alleging that Defendant's predecessor-in-interest, Adams Instruments, infringed on Plaintiff's '983 Patent by manufacturing and selling

1   wireless communication products believed to be utilizing technologies covered by the '983

2   Patent. (Original Compl., Dkt. No. 1 at 4; First Am. Compl., "FAC," Dkt. No. 91 ¶ 16.)  Plaintiff

3   accuses three categories of TSI products of infringement: Non-Optical Devices, Pulse Height

4   Detection Devices, and Pulse Integration Devices. (*See* Def.'s Mot. for Summary J., "Def.'s

5   Mot.," Dkt. No. 152 at 1.)  The TSI products that stand accused are AEROTRAK Handheld

6   Particle Counters 9303, 9306; AEROTRAK Nanoparticle Aerosol Monitor 9000; AEROTRAK

7   Portable Particle Counters 9310, 9110, 9350, 9500, 9510, 9550; AEROTRAK Remote Particle

8   Counters 7110, 7201, 7301, 7301-P, 7310, 7501, 7510; BIOTRAK Real-Time Viable Particle

9   Counter 9510-BD; Optical Particle Sizer 3330; and DustTrak. (FAC ¶ 16.)

10         The case was stayed pending the reexamination of the '983 Patent by the U.S. Patent and

11   Trademark Office (PTO). (Dkt. No. 37.)  Ultimately, only claims 6-8 survived the PTO's

12   reexamination process with amendment.  One such amendment was the addition of the words

13   "without using a reference voltage" in claim 6. ('983 Patent Reexamination Certificate, Decl. of

14   Courtland Merrill in support of Def.'s Mot. for. Summary J., "Merrill Decl.," Ex. 3, Dkt. No. 153-

15   3 at 25, col. 2 l. 1-2 (issued Aug. 14, 2012).  On September 18, 2012, Plaintiff filed a first

16   amended complaint alleging infringement of the surviving, amended claims. (*See* FAC ¶ 12.)

17         On November 22, 2013, the Court held a claim construction hearing.  The claim

18   construction order was issued on February 24, 2014. (Dkt. No. 168.)

19         On December 12, 2013, Defendant filed the instant motion for summary judgment.  (Dkt.

20   No. 152.)  Plaintiff filed his opposition on December 23, 2013. (Dkt. No. 156.)  Defendant filed

21   its reply on January 6, 2014. (Dkt. No. 159.)

22                              **II.  LEGAL STANDARD**

23         Summary judgment is appropriate when, after adequate discovery, there is no genuine

24   issue as to material facts and the moving party is entitled to judgment as a matter of law. Fed. R.

25   Civ. P. 56; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Material facts are those

26   that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248

27   (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable

28   jury to return a verdict for the nonmoving party. *Id*.

United States District Court
Northern District of California

1   A party seeking summary judgment bears the initial burden of informing the court of the

2   basis for its motion, and of identifying those portions of the pleadings and discovery responses

3   that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477

4   U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must

5   affirmatively demonstrate that no reasonable trier of fact could find other than for the moving

6   party. *Southern Calif. Gas. Co. v. City of Santa Ana,* 336 F.3d 885, 888 (9th Cir.2003).

7   On an issue where the nonmoving party will bear the burden of proof at trial, it may

8   discharge its burden of production by either (1) by "produc[ing] evidence negating an essential

9   element of the nonmoving party's case" or (2) after suitable discovery "show[ing] that the

10  nonmoving party does not have enough evidence of an essential element of its claim or defense to

11  discharge its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd., v. Fritz

12  Cos., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000); *see also Celotex*, 477 U.S. 324-25.

13  In the patent infringement context, "[i]n the light of *Celotex,* we conclude that nothing

14  more is required [of a defendant] than the filing of a summary judgment motion stating that the

15  patentee had no evidence of infringement and pointing to the specific ways in which accused

16  systems did not meet the claim limitations." *Exigent Tech., Inc. v. Atrana Solutions, Inc.*, 442

17  F.3d 1301, 1308-09 (Fed. Cir. 2006).

18  Once the moving party meets its initial burden, the opposing party must then set forth

19  specific facts showing that there is some genuine issue for trial in order to defeat the motion. *See*

20  Fed.R.Civ.P. 56(e); *Anderson,* 477 U.S. at 250.  "A party opposing summary judgment may not

21  simply question the credibility of the movant to foreclose summary judgment.  "Instead, the non-

22  moving party must go beyond the pleadings and by its own evidence set forth specific facts

23  showing that there is a genuine issue for trial." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997

24  (9th Cir. 2001) (citations and quotations omitted).  The non-moving party must produce "specific

25  evidence, through affidavits or admissible discovery material, to show that the dispute exists."

26  *Bhan v. NMS Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991).  Conclusory or speculative

27  testimony in affidavits and moving papers is insufficient to raise a genuine issue of material fact

28

United States District Court
Northern District of California

1   to defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Electronics Corp.*, 594

2   F.2d 730, 738 (9th Cir. 1979).

3       In deciding a motion for summary judgment, a court must view the evidence in the light

4   most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Anderson,*

5   477 U.S. at 255; *Hunt v. City of Los Angeles,* 638 F.3d 703, 709 (9th Cir. 2011).

6                                   **III.DISCUSSION**

7       In his first amended complaint, Plaintiff alleges that Defendant is liable to him for direct

8   infringement of the reexamined patent at issue in this case.  (FAC ¶ 34.)

9       TSI argues that it is entitled to summary judgment on the grounds of noninfringement and

10  that the '983 Patent is invalid for indefiniteness pursuant to 35 U.S.C. § 112 ¶¶ 2, 6.[1]

11  **A.  Noninfringement**

12      TSI argues that its products do not infringe on the amended '983 Patent, "because none of

13  the products includes each limitation required by claim 6, the sole independent claim." (Def.'s

14  Mot. at 1.)  To establish infringement, a plaintiff "must prove that the accused device embodies

15  every limitation in the claim, either literally or by a substantial equivalent." *Conroy v. Reebok*

16  *Int'l, Ltd.*, 14 F.3d 1570, 1573 (Fed. Cir. 1994)(citations omitted).  Claim 6 survived patent

17  reexamination as follows:

18          6. An apparatus for counting and measuring particles, providing a
        processing of an output of a light detecting means, said apparatus comprises:
19              a current-voltage conversion means, providing conversion of said output
        of said light detecting means to voltage value signals, and wherein said output is
20      effectively indicative of a size of said particles;
21              an amplifying means, providing an amplification of said voltage value
        signals;
22              an analog-digital form pulse duration conversion means, providing
        conversion of each of said voltage value signals to a digital form pulse without
23      using a reference voltage to convert each said voltage value signals, wherein each
        said digital form pulse has a duration, which is adequate to a baseline duration of
24      the appropriate output of said light detecting means;
25              a strobe pulse generating means, providing generating of strobe pulses;

26  _____

27  [1] The '983 Patent was filed before the effective date of the Leahy Smith America Invents Act
    ("AIA"), which applies to patent applications filed on or after September 16, 2012. Therefore, all
28  citations to § 112 refer to the pre-AIA statute, which contains paragraph numbers rather than
    lettered subsections.

United States District Court
Northern District of California

1

          a conjunction means, forming strobe pulse packages by conjunction of
      each said digital form pulse and said strobe pulses;

2

          a selecting, sorting and counting means, providing the selection and
      sorting of said strobe pulse packages by an identical quantity of said strobe pulses

3

      within each of said strobe pulse packages.

4    ('983 Patent Reexamination Certificate, col. 1 l. 20 - col. 2 l. 17.)  For the purposes of summary

5    judgment, the pertinent limitations in claim 6 are "light detecting means," "without using a

6    reference voltage," "strobe pulses" and "strobe pulse packages."

7          1.   Light Detecting Means

8          In its motion, TSI concedes that its Pulse Height Detection Devices and Pulse Integration

9    Devices "use a light detecting means to measure and count particle size." (Def.'s Mot. at 8-9.)  As

10   discussed *infra*, however, these devices also require the use of a reference voltage, and so do not

11   embody every limitation in claim 6. *See infra* Part III.A.2.

12         TSI contends that none of its remaining "accused Non-Optical Devices include 'light

13   detecting means,' [because]... [t]he Non-Optical Devices do not measure and count particles by

14   light output." (Def.'s Mot. at 1.)  To support its assertion, TSI provides the declaration of Ricky

15   Holm, an Electrical Engineering Manager at TSI with over 20 years of professional experience in

16   research, development and manufacturing of particle measuring equipment. (Decl. of Ricky Holm

17   in Support of Def.'s Mot. for Summary J., "Holm Decl.," Dkt. No. 154 ¶ 2.)  Mr. Holm has been

18   involved in TSI's development of multiple products and projects, including optical particle

19   counters, and is a co-inventor of U.S. Patents. (Holm Decl. ¶ 2.)  Mr. Holm reviewed the '983

20   Patent and the Ex Parte Reexamination Certificate, as well as the first amended complaint, and the

21   documents attached to the same.  (Holm Decl. ¶ 3.)  Mr. Holm states that TSI's only accused

22   Non-Optical Device, AEROTRAK 9000, does not use a light detecting means to count and

23   measure particles. (Holm Decl. ¶ 14, Ex. B.)  Instead, "[t]he AEROTRAK 9000 converts

24   electrometer measurements of the charges of sample particles into surface area concentration

25   units of square micrometers per cubic centimeter." (Holm Decl. ¶ 14.)

26         In response, Plaintiff fails to provide any evidence to the contrary, as his opposition

27   consists almost entirely of conclusory allegations regarding TSI's credibility and Mr. Holm's

28   "personal interest of employment and the company's process and prosperity." (*See* Pl.'s Opp'n,

Dkt. No. 156 at 9.)  Further, after examining the AEROTRAK 9000, Plaintiff could not identify how it uses a light detecting means, and instead only reiterated his conclusory allegation that it generally infringed on claims 6, 7, and 8 of the '983 Patent. (Yufa Dep., Merrill Decl., Ex. 2 at 120-21.)

Accordingly, since the AEROTRAK 9000 does not use a light detecting means, as required by claim 6, and Plaintiff does not provide any admissible evidence to the contrary, the Court finds that it does not infringe on the '983 Patent.

2.  <u>Without Using a Reference Voltage</u>

During reexamination, the '983 Patent was amended to require that the patented system convert a light detector's amplified output into a digital signal "without using a reference voltage." ('983 Patent Reexamination Certificate, col. 2 l. 1-3.)

In its motion, TSI asserts that Plaintiff is unable to establish infringement as to the remaining, Optical Devices.  (Def.'s Mot. at 13.)  TSI has two categories of Optical Devices: Pulse Height Detection Devices and Pulse Integration Devices. (Def.'s Mot. at 8.)  While the Optical Devices use a light detecting means, they also require the use of a "reference voltage" to convert analog-digital form pulse value signals to digital form pulses. (Def.'s Mot. at 13; Holm. Decl. ¶¶ 15-19.)  It is the requisite inclusion of a reference voltage that negates Plaintiff's infringement claims.  (Def.'s Mot. at 13.)  Again, to support its assertion, TSI provides the declaration of Mr. Holm.

a.  *Pulse Height Detection Devices*

According to Mr. Holm, in the Pulse Height Detection Devices, "[r]eference voltages are used in at least two ways: (1) to establish the voltage resolution of an analog-to-digital converter and (2) to establish "binning" thresholds of comparator devices."  (Def.'s Mot. at 13:23-25; Holm Decl. ¶ 15.)  In his declaration, Mr. Holm explains that each of TSI's Pulse Height Detection Devices[2] contain an analog-digital converter, but conversion requires "an analog reference voltage to prescribe the voltage span." (Holm Decl. ¶ 16.)  Other Pulse Height Devices, referred to as

---

[2] AEROTRAK Handheld Particle Counters 9306-01, 9306-02, 9306-V, 8220; AEROTRAK Portable Particle Counters 9110, 9310-01, 9350-01, 9510-01, 8240, 8260; AEROTRAK Remote Particle Counter 7110; Optical Particle Sizer 3330; and DustTrak. (Holm Decl. ¶ 16.)

United States District Court
Northern District of California

"comparator devices," use one or more "comparators" to determine the size range of the corresponding particle.[3] (Def.'s Mot. at 15.)  TSI's comparators "have configurable reference voltages corresponding to one of several possible amplitude levels of a detected pulse, referred to as a 'binning' level." *Id*.  Accordingly, these Pulse Height Detection Devices—both those that use and do not use comparators—require a reference voltage to perform its function.

Without providing any evidence in support of his opposition, Plaintiff generally alleges that "TSI's products unconditional infringe the patent-in-suit, because they convert the analog signal to a digital form pulse 'without using a reference voltage to convert' analog[] signal to digital form pulse." (Pl.'s Opp'n at 9:8-10.)  Such conclusory allegations, however, are insufficient to create a genuine issue of material fact to avoid summary judgment.

   b.   *Pulse Integration Devices*

TSI asserts that all of its remaining accused Pulse Integration Devices[4] use pulse area to size particles instead of pulse amplitude. (Def.'s Mot. at 15, Holm Decl. ¶ 18.)  These products use a "reference threshold" to prevent false indications of a particle, and, therefore, only "indicate the presence of a pulse if the voltage signal exceeds the reference threshold value." (Holm Decl. ¶ 19.)  This necessitates the use of a reference voltage for a set point, as the integration operation is initiated only after the signal exceeds the reference threshold voltage, and ceases when the signal drops before the reference threshold value. (Def.'s Mot. at 15; Holm Decl. ¶ 19.)

Again, Plaintiff's opposition is limited to conclusory allegations of infringement and fails to identify any admissible evidence outside of the pleadings to show that the accused products detect particles without the use of a reference voltage.  Plaintiff claims that TSI uses Pulse Width Modulation, rather than a reference voltage, that uses an analog value "as a digital pulse where the on time is proportional to the value...." (FAC ¶ 18.)  Plaintiff cites Exhibits H and I in his first amended complaint as evidence of TSI's use of Pulse Width Modulation, but those documents are

_____

[3] The Pulse Height Devices referred to as "comparators" are: AEROTRAK Handheld Particle Counter 9303; AEROTRAK Remote Particle Counters 7201, 7301, 7301-P, 7310, 7501, and 7510.

[4] TSI's Pulse Integration Devices include: AEROTRAK Handheld Particle Counters 9306-03, 9306-04, 9306-V2; AEROTRAK Portable Particle Counters 9310-2, 9350-02, 9500-1, 9510-2, 9550-02, 9350-3; and BIOTRAK Real-Time Viable Particle Counter 9510-BD.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   not conclusive. (*See* Pl.'s Opp'n at 8.)  Exhibit H is a document of unknown authorship titled

2   "Introduction to Interfaces Used in Facility Monitoring Systems," which contains an overview of

3   many different components, including Pulse Width Modulation, and broadly cites to internet

4   sources such as Wikipedia. (FAC, Ex. H.)  The document does not identify TSI in any way, either

5   by way of letterhead and/or logo, or by citing to TSI or any of its products. *See id.*  Exhibit I is a

6   TSI document titled "Facility Monitoring System Design Recommendations." (FAC, Ex. I.)

7   Exhibit I concerns larger system networking, including the use of a local area network and IP

8   addresses, and the single paragraph on remote particle counters does not refer to Pulse Width

9   Modulation at all and provides no evidence that the accused products detect particles without a

10  reference voltage. *Id.* at 8.

11          Accordingly, TSI contends that it does not use Pulse Width Modulation, and that the

12  evidence previously identified by Plaintiff fails to show that the accused products incorporate the

13  technology. (Def.'s Mot. at 16; Holm Decl. ¶ 16.)  The Court agrees that Plaintiff has failed to

14  produce, or otherwise identify, any admissible evidence to create a genuine issue of material fact

15  in regards to whether the accused products operate without the use of a reference voltage and

16  whether they use Pulse Width Modulation.

17           In fact, Defendant has provided evidence that each of the particle counters used in

18  connection with the accused products uses a reference voltage to convert analog particle signals

19  into digital form pulses, and, therefore, do not embody a limitation of the '983 Patent.  Further,

20  Plaintiff cannot resort to the doctrine of equivalents, because the addition of "without a reference

21  voltage" was required to survive reexamination and preserve patentability.  Consequently, there

22  can be no infringement, because infringement requires the accused device to embody every

23  limitation of the asserted patent claims. *See Conroy v. Reebok Int'l Ltd.*, 14 F.3d 1570, 1573 (Fed.

24  Cir. 1994).

25          3.  Strobe Pulses and Strobe Pulse Packages

26          Since all of the accused devices were addressed above and found not to embody all of the

27  limitations in claim 6, the Court need not address whether the accused devices form strobe pulses

28  or strobe pulse packages.

**B.  Indefiniteness**

TSI contends that claim 6 is invalid for indefiniteness under 35 U.S.C. § 112 ¶ 6, for failure to identify the applicable structure in the means-plus-function claims.  Since the Court is finding that there is no infringement, it need not address indefiniteness.

**C.  Plaintiff fails to create a genuine issue of material fact.**

In his opposition, Plaintiff fails to present any evidence that would create a genuine issue of material fact to defeat Defendant's motion for summary judgment.  A dispute is material where its resolution might affect the outcome of the suit under the governing law, and is genuine if the evidence is sufficient for a reasonable jury to return a verdict in favor of the non-moving party. *Anderson*, 477 U.S. at 248.

After the moving party has met its burden of stating that the patentee has no evidence of infringement and pointing to the specific ways in which the accused systems do not meet the claim limitations, the non-moving party must go beyond the pleadings and identify specific facts that show a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).  A genuine dispute over a material fact only exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson,* 477 U.S. at 253.

Here, Plaintiff fails to present any additional evidence beyond his conclusory contention that TSI's products infringe. (Pl.'s Opp'n at 9.)  Other than generally citing to Exhibits H and I attached to his first amended complaint, discussed above, Plaintiff's opposition consists almost entirely of conclusory allegations regarding TSI's credibility, which does not create a genuine issue of material fact. (*See* Pl.'s Opp'n at 1:13-16.)  Indeed, when ruling on a motion for summary judgment, the Court "may not evaluate the credibility of a witness or weigh the evidence." *California Steel & Tube v. Kaiser Steel Corp.*, 650 F.2d 1001, 1003 (9th Cir. 1981) (citing *Neely v. St. Paul Fire & Marine Insurance Co.*, 584 F.2d 341, 344 (9th Cir. 1978)).  Instead, the Court is tasked with determining whether the non-moving party has produced sufficient evidence to support its position. *Anderson*, 477 U.S. at 249.

United States District Court
Northern District of California

1    Further, despite his protestations to the contrary, Plaintiff is not entitled "to study TSI's

2  products (e.g., handheld particle counters, etc.) at least by schematic diagrams and drawings."

3  (Pl.'s Opp'n at 9:17-18.)  Plaintiff is only entitled to review those documents pertaining to the

4  accused products.  At the tutorial, Plaintiff acknowledged that he was given the opportunity to

5  review documents pertaining to the accused products when he went to TSI's headquarters for the

6  document production.  Plaintiff makes no showing that additional evidence actually exists, so any

7  lack of diligence on his part is not grounds to deny the motion for summary judgment. *See*

8  *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1161 (9th Cir. 2001).

9    For the reasons set forth above, Plaintiff has failed to go beyond the pleadings and identify

10  sufficient evidence supporting the existence of a genuine factual dispute that would preclude

11  summary judgment as to whether Defendant's accused products use both a reference voltage and

12  a light detecting means.

### IV. CONCLUSION

14    In accordance with the foregoing, TSI's motion for summary judgment is GRANTED on

15  the grounds of non-infringement, as Plaintiff has failed to produce evidence to support his claims

16  for patent infringement.  Specifically, none of TSI's accused products embody all of the

17  limitations found in claim 6 of the '983 Patent.

18    The Clerk shall close the case.

19    IT IS SO ORDERED.

20  Dated: May 21, 2014

KANDIS A. WESTMORE
United States Magistrate Judge