UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEKSANDR L. YUFA,<br><br>    Plaintiff,<br><br>    v.<br><br>TSI INCORPORATED,<br><br>    Defendant. | Case No. 4:09-cv-01315-KAW<br><br>**ORDER GRANTING DEFENDANT'S SECOND RENEWED MOTION TO COMPEL ASSIGNMENTS OF PATENTS TO RECEIVER**<br><br>Re: Dkt. No. 289 |

On April 18, 2018, Defendant TSI Incorporated filed a second renewed motion to compel the assignment of Dr. Yufa's patents to a receiver.

Upon review of the moving papers, the Court finds this matter suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b), and, for the reasons set forth below, GRANTS TSI's second renewed motion to compel the assignment of Dr. Yufa's patents to Receiver Greyhound IP.

## I. BACKGROUND

Plaintiff Aleksandr L. Yufa is an inventor, who has applied for and acquired multiple U.S. patents. Filed on January 29, 1998, and entitled "Methods and Wireless Communicating Particle Counting and Measuring Apparatus," U.S. Patent No. 6,346,983 ("the '983 Patent"), which was at the center of this lawsuit, concerns the methods and devices for determining the existence, size, and quantity of airborne particles by utilizing a light beam. '983 Patent col. 1 l.5-10. As originally issued, the '983 Patent contained eight claims in total.

Plaintiff filed this action on March 25, 2009, alleging that Defendant TSI Incorporated's predecessor-in-interest, Adams Instruments, infringed on Plaintiff's '983 Patent by manufacturing and selling wireless communication products believed to be utilizing technologies covered by the

'983 Patent. The case was stayed pending the reexamination of the '983 Patent by the U.S. Patent and Trademark Office ("PTO"). Ultimately, only claims 6-8 survived the PTO's reexamination process with amendment. One such amendment was the addition of the words "without using a reference voltage" in claim 6. ('983 Patent Reexamination Certificate col. 2 l. 1-2 (issued Aug. 14, 2012)).

On May 21, 2015, the Court granted Defendant's motion for summary judgment, and, on September 3, 2014, TSI obtained a monetary judgment in the amount of $166,364.88 against Dr. Yufa. (Dkt. Nos. 176-177, 205.)

On February 18, 2016, the Court granted TSI's motion to appoint a receiver and to compel the assignment of Dr. Yufa's patents to satisfy its monetary judgment in part by appointing Greyhound IP as receiver, but declined to compel the assignment of the patents until after Greyhound IP provided a valuation. (2/18/16 Order, Dkt. No. 240.) The Court instructed TSI that any future motion for assignment should be accompanied by a declaration from the receiver setting forth the value of each patent and a plan for selling the patents. *Id.* at 5. Dr. Yufa appealed, and the Federal Circuit affirmed. (Dkt. No. 250.)

On June 22, 2017, the Court denied Dr. Yufa's *ex parte* application requesting an order directing TSI to file its forthcoming motion to compel the assignment of patents to the appointed receiver by a certain deadline (Dkt. No. 253). (6/22/17 Order, Dkt. No. 262.) In the same order, the Court granted TSI's motion to approve the instructions for the administration of the court-appointed receiver Greyhound IP LLC (Dkt. No. 256). (6/22/17 Order at 1-2.) Therein, the Court ordered that:

> 1. Greyhound, or its acquirer, Houlihan Lokey, with offices at One Sansome Street, Suite 1700, San Francisco, CA 94104 shall swear to perform the duties of receiver faithfully pursuant to California Code of Civil Procedure § 567.
>
> 2. Greyhound shall have all of the powers and authority usually held by receivers and reasonably necessary to value the Receivership Property unless otherwise stated, without further order of the Court.
>
> 3. Greyhound shall have the right to apply to this Court for further instructions or directions.

> 4. Greyhound shall be entitled to be paid without prior Court approval, at the rate of $400.00 per hour, not to exceed $40,000.00. Greyhound's compensation for valuing the Receivership Property shall be paid directly by the Defendant. Upon approval of the Court, any sums paid by Defendant to Greyhound shall be added to the judgment after Greyhound has provided its final declaration or report to the Court regarding the value of the Receivership Property.
>
> 5. Plaintiff, as well as his agents or representatives, shall cooperate with all requests of Greyhound and are enjoined from interfering with Greyhound's performance of its duties hereunder.
>
> 6. Greyhound shall faithfully perform and discharge its duties and obey the Court's orders.

*Id.* at 2-3. In sum, Greyhound's fees may not exceed $40,000, which "shall be added to the judgment after Greyhound has provided its final declaration or report to the Court regarding the value of the Receivership Property." *Id.* at 2. Therefore, the maximum final judgment, absent further court order, is $206,464.88. *See id.*

On July 7, 2017, Dr. Yufa filed a notice of appeal to the Federal Circuit appealing the denial of his *ex parte* application and Order Nos. 4 and 5, above. (Dkt. No. 263.)

On September 5, 2017, while the appeal was pending, TSI filed a renewed motion to compel assignment of patents to the receiver, in which it represented that Greyhound appraised the aggregate value of all of the patents to be between $129,000 and $198,000. (Dkt. No. 267 at 3; Decl. of Mitchell Rosenfeld, Dkt. No. 268 ¶¶ 3-7, Ex. A.)

On October 2, 2017, the Federal Circuit lifted the stay of the proceedings, and set a briefing schedule for the parties to address whether the court had jurisdiction or whether the appeal should be dismissed for lack of jurisdiction. (Dkt. No. 272 at 1-2.)

On December 11, 2017, in an abundance of caution, the undersigned denied the renewed motion to compel the assignment of patents to the receiver without prejudice to permit the Federal Circuit to rule on the jurisdictional issue, and to potentially determine whether the inclusion of the sums approved to be paid to Greyhound were proper. (Dkt. No. 273 at 2.) The Court invited TSI to file a second renewed motion once the appeal was resolved. *Id.* at 3.

On April 13, 2018, the Federal Circuit dismissed Dr. Yufa's appeal for lack of jurisdiction. (Dkt. No. 288-1.) Therein, the Federal Circuit opined that "[i]t is time for Dr. Yufa to pay the just debts he owes to TSI." *Id.* at 7.

3

On April 18, 2018, Defendant TSI Incorporated filed a second renewed motion to compel the assignment of Dr. Yufa's patents to a receiver, in which it incorporated its renewed motion and accompanying declarations. (Notice of Mot., Dkt. No. 289; Def.'s Mot., Dkt. No. 267; Dkt. Nos. 268-269.) On April 26, 2018, Plaintiff filed an opposition. (Pl.'s Opp'n, Dkt. No. 290.) On May 9, 2018, Defendant filed a reply. (Def.'s Reply, Dkt. No. 291.) On May 14, 2018, Plaintiff filed objections to Defendant's reply, in which he objected to two assertions that Plaintiff's respective arguments were wrong. (Pl.'s Obj., Dkt. No. 292 at 1.)[1]

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 69(a) provides that a money judgment obtained in federal court is enforced by a writ of execution and the procedure on execution must generally accord with the procedure of the state where the court is located, but federal statutes govern to the extent they apply. Under Federal Rule of Civil Procedure 66, a receiver may be appointed by the court. Rule 66 does not provide the specifics for appointing a receiver to assign and sell patents in satisfaction of a money judgment. *See Office Depot Inc. v. Zuccarini*, 596 F.3d 696, 701 (9th Cir. 2010). Since no federal statute applies to the appointment of a receiver, Rule 69(a) dictates that state law be followed. *See In re Levander*, 180 F.3d 1114, 1121 (9th Cir. 1999) (Rule 69(a) allows judgment-creditors to use state law to collect on their debts).

California Code of Civil Procedure § 708.610 provides that the provisions of Chapter 5, commencing with Code of Civil Procedure § 564, governs the appointment, qualifications, powers, rights and duties of a receiver. *Wells Fargo Fin. Leasing, Inc. v. D & M Cabinets, et al.*, 177 Cal. App. 4th 59, 70 (2009). Section 564(b)(3) provides that a receiver may be appointed by the court after judgment, to carry the judgment into effect. The receiver has, under the control of the court, the power to take and keep possession of the property, to make transfers, and generally to do such acts respecting the property as the court may authorize. Cal. Civ. Proc. Code § 568. "A receiver may, pursuant to an order of the court, sell real or personal property in the receiver's possession upon the notice and in the manner prescribed by Article 6 (commencing with Section

---

[1] Plaintiff's objections, which are not based on any analysis or legal authority, are overruled.

4

701.510) of Chapter 3 of Division 2 of Title 9." Cal. Civ. Proc. Code § 568.5. The sale is not final until confirmed by the court. *Id.* Section 701.810 provides for the order of distribution of the proceeds of sale.

California Code of Civil Procedure § 708.620 provides:

> The court may appoint a receiver to enforce the judgment where the judgment creditor shows that, considering the interests of both the judgment creditor and the judgment debtor, the appointment of a receiver is a reasonable method to obtain the fair and orderly satisfaction of the judgment.

Cal. Civ. Proc. Code § 708.620. Under Section 708.620, a receiver may be appointed where a writ of execution would not reach certain property and other remedies appear inadequate. Comment to Cal. Civ. Proc. Code § 708.620. A patent owner may be compelled to assign all of his rights in a patent to an appointed receiver to dispose of it in satisfaction of a judgment. *Finnegan v. Finnegan*, 64 Cal. App. 2d 109, 112-13 (1944); *Peterson v. Sheriff of City & Cnty. of San Francisco*, 115 Cal. 211, 213 (1896) (writs of execution do not reach patents); *Ager v. Murray*, 105 U.S. 126, 131 (1881) (patents are subject to assignment).

### III. DISCUSSION

On February 18, 2016, the Court appointed Greyhound IP as the receiver. The Court, while recognizing that Dr. Yufa's patents may be assigned to the appointed receiver for the purposes of satisfying the judgment, declined to compel the assignment of the patents without a valuation. (2/18/16 Order at 4-5.) In making the second renewed motion, TSI has provided a formal valuation in support of its motion to compel the assignment of Plaintiff's U.S. Patent Nos. 7,573,573; 7,439,855; 6,346,983; 6,034,769; 5,969,665; 5,946,091; and 5,767,967 to a receiver in order to satisfy the judgment entered in this case. (Def.'s Mot. at 1.)

#### A. Assignment of the Patents

##### i. Valuation

The undersigned previously declined to assign the patents in 2016, due to a concern that the value could far exceed the amount of the judgment, and Dr. Yufa would be unjustly divested of his intellectual property. (*See* 2/18/16 Order at 4-5.) As a result, the Court stated that it would "entertain a second motion for assignment once the proposed receiver conducts a proper valuation

of each patent, both individually and in the aggregate" and that the "future motion for assignment should be accompanied by a declaration from the receiver setting forth the value of each patent and a plan for selling the patents." *Id.* at 5.

In its second renewed motion, TSI provides valuation information regarding the seven patents at issue, which was completed by Receiver Greyhound IP. (Def.'s Mot. at 3.) In performing the valuation, "Greyhound IP researched comparable transactions, completed a detailed analysis of the patents, including a litigation history, to determine how the market would likely view the patents, and estimated a value range for the patents based upon comparable transactions and an assessment of the analytical characteristics of each patent." (Def.'s Mot. at 3 (citing Decl. of Mitchell Rosenfeld, "Rosenfeld Decl.," Dkt. No. 268 ¶ 3, Ex. A at 2).)

Greyhound IP concluded that U.S. Patent Nos. 7,573,573, 7,439,855, and 6,346,983 were each valued between $35,000 and $50,000. (Rosenfeld Decl. ¶ 4, Ex. A at 3.) Greyhound IP concluded U.S. Patent No. 5,969,665 was valued between $24,000 and $48,000. (Rosenfeld Decl. ¶ 5, Ex. A at 3.) Finally, Greyhound IP concluded that U.S. Patent Nos. 6,034,769, 5,946,091, and 5,767,967 had a *de minimis* value because they had expired. (Rosenfeld Decl. ¶ 6, Ex. A at 3.) Greyhound IP concluded the aggregate value of all the patents is between $129,000 and $198,000. (Rosenfeld Decl. ¶ 7, Ex. A at 3.) The current outstanding amount of the judgment is $166,364.88, which does not include any of the receiver's costs. (*See* Dkt. Nos. 205, 262.) The Court notes that, should Greyhound IP incur the total $40,000.00 in fees it is entitled to be paid without further court approval, the maximum expected sale amount of $198,000 would not satisfy the final judgment. (*See* Dkt. No. 262 at 2.)

> Greyhound IP's plan for selling the patents is to:
> (a) prepare a sales deck; (b) prepare a data room for prospective buyers (patents, file histories, encumbrance information, relevant courts orders and filings, etc.); (c) research and prepare a list of prospective buyers for a marketing campaign; (d) conduct outreach to and communicate with prospective buyers through email and telephone; (e) prepare and place an advertisement or listing in a relevant trade publication if reasonably helpful; (f) negotiate with and secure a stalking horse bidder if possible; and (g) conduct an auction for qualified bidders approximately thirty (30) days after the initial notice to prospective buyers.

(Def.'s Mot. at 3-4; Rosenfeld Decl. ¶ 8.) Greyhound expects that this auction process will

maximize the return on the sale of the patents. (Rosenfeld Decl. ¶ 8.)

In opposition, Plaintiff argues that the patent valuation material is insufficient and does not reflect the true value of the receivership property, because it is "not based upon any of the known concrete and generally used principles and methods for patent valuation" and it does not take into account the four pending patent infringement cases involving the '983 Patent. (Pl.'s Opp'n at 1.) To the extent that Plaintiff argues that the valuation does not consider the value of four pending lawsuits involving a patent at issue, Mr. Rosenfeld expressly considered the history of litigation involving Dr. Yufa's patents. (Rosenfeld Decl., Ex. A at 2, 11-12, 14, 19.)

In its reply, TSI argues that the patent valuation is sufficient given that Receiver Mitchell Rosenfeld is a registered patent attorney with over 20 years of experience as an intellectual property professional that specializes in the monetization of intellectual property portfolios. (Def.'s Reply at 1; Rosenfeld Decl. ¶ 2.) Furthermore, Mr. Rosenfeld used a market-based approach based upon comparable transactions, and compared market trends, in reaching his conclusions. (Def.'s Reply at 1; Rosenfeld Decl., Ex. A at 6, 9-10.) The Court notes that Plaintiff does not offer any explanation as to why the market-based approach employed by Mr. Rosenfeld is not a valid patent valuation method. To the contrary, the Court is satisfied with Mr. Rosenfeld's valuation, and Greyhound IP's plan for maximizing the return on the sale of the patents via auction. (Rosenfeld Decl. ¶ 8.)

### ii. Proposed Patent Assignment Form

Greyhound IP has prepared a form to assign the patents that it believes is acceptable to the United States Patent and Trademark Office ("PTO"). (Rosenfeld Decl. ¶ 9, Ex. B.) Pursuant to 35 U.S.C. § 261, patents "shall be assignable in law by an instrument in writing. The applicant, patentee, or his assigns or legal representative may in like manner grant and convey an exclusive right under his application for patent, or patents, to the whole or any specified part of the United States."

In opposition, Dr. Yufa argues that the proposed assignment form is not an official PTO form, and requests that the Court not approve the form for that reason. (Pl.'s Opp'n at 1.) In reply, TSI explains that there is no requirement that an assignment of patents be made on a form by the

1 PTO. Indeed, § 261 only requires that the assignment be made in writing. While the Court appreciates TSI's willingness to consider a different form, so long as it sufficiently conveys ownership of the patents to the Receiver, the undersigned finds that the form submitted by Greyhound IP is appropriate for the purposes of the assignment of Dr. Yufa's patents.

Accordingly, the Court grants TSI's motion to assign Dr. Yufa's patents, using the form attached as Exhibit B to Mr. Rosenfeld's declaration, to Greyhound IP for sale and to use the funds to satisfy the judgment.

### B. Whether Greyhound IP should be appointed Dr. Yufa's legal representative in the event that he refuses to assign the patents.

Additionally, Defendant requests that the Court appoint Greyhound IP as Dr. Yufa's legal representative for the limited purpose of assigning the patents should Dr. Yufa refuse to comply with the Court's order. (Def.'s Mot. at 5.) TSI argues that Dr. Yufa's repeated resistance to TSI's efforts at collection indicates that he may also resist in assigning the patents. *See id.*

Pursuant to 35 U.S.C. § 261, "patents shall have the attributes of personal property." If a patent owner refuses to execute the assignment, the district court may appoint a legal representative to assign the patents on the patent owner's behalf. *See McClaskey v. Harbison-Walker Refractories Co.*, 138 F.2d 493, 499 (3d Cir. 1943) (in validating a sheriff's sale, and labeling the sheriff the "legal representative" of the judgment-debtor, the court considered the sheriff's bill of sale as the necessary assignment required under 35 U.S.C. § 261).

Thus, if Dr. Yufa refuses to assign the patents to the Greyhound IP, the Court may appoint Greyhound IP as Dr. Yufa's "legal representative" under § 261 for purposes of taking possession of, and causing the patents to be assigned, to the receivership for a sale. TSI asks that the Court "order Dr. Yufa to execute the proposed assignment in the form prescribed by Greyhound IP within ten days" and, in the event that Dr. Yufa fails to do so, "appoint Greyhound IP as Dr. Yufa's legal representative for the sole purpose of executing an assignment of the patents on his behalf to the receivership." (Def.'s Mot. at 5-6.)

In opposition, Dr. Yufa objects to the 10-day period proposed by TSI, because it would deprive him of his ability to appeal to the Federal Circuit and the United States Supreme Court.

8

(Pl.'s Opp'n at 1-2.) The Federal Circuit has at least twice articulated that Dr. Yufa should pay his debts, and intimated the futility of future appeals based on the assignability of patents to satisfy the judgment in this case. (Dkt. No. 288-1 at 3, 7.) Notwithstanding, the undersigned will not deprive Plaintiff of his right to appeal this order.

Accordingly, the Court orders Dr. Yufa to execute the proposed assignment, and, should he refuse to do so within 45 days, appoints Mitchell Rosenfeld at Greyhound IP as his legal representative for the sole purpose of executing an assignment of the patents on his behalf to the receivership. If Dr. Yufa timely appeals this order to the Federal Circuit, Mr. Rosenfeld will be immediately appointed the legal representative in the event that Dr. Yufa has exhausted his rights to appeal.

**IV.    CONCLUSION**

In light of the foregoing, TSI's second renewed motion to compel the assignment of Plaintiff Aleksandr L. Yufa's patents to satisfy its monetary judgment is GRANTED, and the Court enters the following orders:

1.    "Receivership Property" means and includes the following United States Patents: 7,573,573; 7,439,855; 6,346,983; 6,034,769; 5,969,665; 5,946,091; 5,767,967, and any continuation, continuation-in-part, or divisional applications(s) related to, and/or that derive priority from, the foregoing patents, and any foreign counterparts thereof, including the rights to all past damages as well as all income derived from these patents.

2.    Plaintiff Aleksandr L. Yufa is directed to immediately, using the form attached as Exhibit B to the Declaration of Mitchell Rosenfeld, assign all rights, title, and interest in the Receivership Property to Greyhound IP LLC as receiver.

3.    In the event that Plaintiff fails to assign the Receivership Property within 45 days, the Court appoints Mitchell Rosenfeld, as legal representative for Plaintiff, for the sole purpose of assigning the Receivership Property to Greyhound IP LLC as receiver. Should Dr. Yufa appeal this order to the Federal Circuit, Mr. Rosenfeld will be immediately appointed Plaintiff's legal representative in the event that Dr. Yufa has exhausted his rights to appeal.

4.    After the patents have been assigned, Greyhound IP LLC is authorized to direct and

take immediate possession and full control of the Receivership Property, to execute the plan outlined in the Declaration of Mitchell Rosenfeld to sell the Receivership Property, and to take such other actions as Greyhound IP LLC deems reasonable and appropriate.

5. After the Receivership Property has been sold, Greyhound IP LLC will file a declaration or report with the Court finalizing its costs paid by Defendant which, upon Court approval, will be added to the judgment.

6. After the judgment has been finalized, Greyhound IP LLC will distribute funds from the sale of the Receivership Property to the judgment creditor, Defendant, to satisfy the judgment. To the extent any funds remain, Greyhound IP LLC will distribute the remaining funds to Plaintiff.

IT IS SO ORDERED.

Dated: August 17, 2018

_Kandis Westmore_
KANDIS A. WESTMORE
United States Magistrate Judge