# EXHIBIT A

## NOTICE OF SALE BY RECEIVER

*Prospective bidders should refer to Sections 701.510 to 701.680, inclusive, of the California Code of Civil Procedure for provisions governing the terms, conditions, and effect of the sale and the liability of defaulting bidders.*

**PLEASE TAKE NOTICE THAT**, Greyhound IP LLC, solely in its capacity as the Court appointed receiver (the "Receiver") for Dr. Aleksandra Yufa, pursuant to pursuant to California Code of Civil Procedure § 567 for Case No. 09-01315 KAW entitled Yufa v. TSI Incorporated US District Court for the Northern District of California (the "Court"), to sell U.S. Patents Nos. 7,573,573 (expired); 7,439,855; 6,346,983; 6,034,769 (expired); US5,946,091 (expired) and 5,767,967 (expired) relating to optical particle counting, (collectively, the "Optical Particle Patents"), and U.S. Patent No. 5,969,665 relating to vessel collision risk detection (the "Vessel Collision Patent") (collectively, the "Yufa Portfolio"). Documents relevant to the sale are available in the virtual data room at the following link, https://www.dropbox.com/s/2of1hntuf4tmp4m/Yufa%20Portfolio%20PSA%202018-11-06.docx?dl=0 or by contacting Receiver's representative (identified below).

The Receiver received a bid from a judgement creditor in the amount of $165,525.88 (the "Stalking Horse Bid") for the Yufa Portfolio. Pursuant to the Auction Procedures (defined below), all subsequent bids must exceed $165,525.88.

**Terms and Conditions of Sale**. The Receiver will sell the Yufa Portfolio, pursuant to the Order Granting Defendant's Second Renewed Motion To Compel Assignments Of Patents To Receiver by the Court. The Yufa Portfolio shall be transferred on an "AS IS," "WHERE IS," and "WITH ALL FAULTS" basis. THE RECEIVER MAKES NO REPRESENTATIONS OR WARRANTIES AS TO CONDITION OR FITNESS OF USE FOR OF THE PROPERTY. THE RECEIVER EXPRESSLY DISCLAIMS ALL EXPRESS AND IMPLIED WARRANTIES WITH RESPECT TO THE SALE ASSETS, INCLUDING, WITHOUT LIMITATION, THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. The winning bidder will be required to execute a patent sale agreement substantially in the form provided in the virtual data room (identified above).

The Receiver expressly reserves the right, upon notice to those parties that have demonstrated an interest in bidding on the Yufa Portfolio, to: (a) modify, waive or amend the Auction Procedure with respect to any or all potential bidders, (b) impose additional terms and conditions with respect to any or all potential bidders, and (c) cancel the sale without further notice. All inquiries regarding the Yufa Portfolio or the Auction Procedures should be directed to the auction representative for the Receiver, Kevin Mulroy, Intellectual Property Trade Pte Ltd, (415) 418-3148 (telephone), kevin@iptrade.net (email).

**Auction Procedure.** Parties interested in participating in the telephonic auction should provide notice by email to **kevin@iptrade.net** before 5:00 pm PST on December 18, 2018 to receive detailed bidding instructions. For those parties providing notice, the auction will be held via a conference call on December 20th at 9:00 am PST.

---

**EXHIBIT A**

# EXHIBIT B

Dear _____,

Intellectual Property Trade Pte Ltd is a Singapore based intellectual property consulting firm focused on assisting patent holders monetize their patent assets.  We represent Greyhound IP LLC in the sale of a patent portfolio pertaining to optical particle counting and vessel collision risk detection (the "Yufa Porfolio").

The Yufa Portfolio was involved in a patent infringement suit with TSI Inc in the US District Court for the Northern District of California.  The court granted summary judgement of noninfringement in favor of TSI Inc.  TSI successfully moved for attorney fees and costs.  To satisfy the judgement, the court appointed Greyhound IP LLC as the receiver to take title and sell the Yufa Portfolio.   Dr. Aleksandr Yufa owned U.S. Patents Nos. 7,573,573 (expired); 7,439,855; 6,346,983; 6,034,769 (expired); US5,946,091 (expired) and 5,767,967 (expired) relating to optical particle counting, (collectively, the "Optical Particle Patents"), and U.S. Patent No. 5,969,665 relating to vessel collision risk detection (the "Vessel Collision Patent").  Based upon the Optical Particle Patents, Yufa filed nine suits for patent infringement including the suit against TSI Inc.

The receiver, Greyhound IP, is not aware of any encumbrances.  However, the Yufa Portfolio is being sold "as is" with no representation or warranties, expressed or implied.

The attached Notice of Sale Document provides details regarding the Auction Procedure.  The auction will be held telephonically on December 20, 2018 at 9:00am PST.  Notice of intent to bid should be provided by December 18, 2018 at 5:00pm PST in order to receive detailed bidding instructions.  The following link will provide access to:

**Yufa Patent Sale**

1)      An overview of the opportunity which includes patent and market data
2)      Court documents from the litigation
3)      Patent Purchase Agreement

Please let me know if you have any questions on the patents or auction process.

Best Regards,

Kevin Mulroy

Intellectual Property Trade Pte Ltd
20 Handy Rd
Nomu #10-05
Singapore 229236
Phone: 65-8233-3874
Website: www.iptrade.net

---

**EXHIBIT B**

# EXHIBIT C



# Overview of the Yufa Patent Portfolio

*Pursuant to California Code of Civil Procedure § 567 for Case No. 09-01315 KAW entitled Yufa v. TSI Incorporated US District Court for the Northern District of California.*

*Prospective bidders should refer to §§ 701.510 to 701.680, inclusive, of the Code of Civil Procedure for provisions governing the terms, conditions, and effect of the sale and the liability of defaulting bidders.*

© 2018 Greyhound IP LLC

EXHIBIT C

# Aleksandra Yufa Patent Portfolio Valuation     GREYHOUND IP

| Portfolio | Assets |
|---|---|
| Optical Particle Counting: US7,573,573*; US7,439,855; US6,346,983; US6,034,769*; US5,946,091*; and US5,767,967* | 2 Active US Patents |
| Vessel Collision Risk Detection: US5,969,665 | 1 Active US Patent |
| **TOTAL** | **3 Active US Patents** |

*Expired*

© 2018 Greyhound IP LLC

2

# Optical Particle Counting (OPC) Patent Portfolio

## GREYHOUND IP

## Patents

These patents relate primarily to the counting of particles measured in a quantity of air.

| Attribute | Comment |
|---|---|
| Priority Dates: | Ranging from 1998 to 2005 |
| Technology: | Detection of particles in quantities of air |
| Market: | Aerosol optical particle counter market |
| Expiration | 2018 – 2025 (4 of 6 have expired) |

© 2018 Greyhound IP LLC

**3**

## OPC, Applicability of IP                                    GREYHOUND IP

➤ The IP relates primarily to the detection of particles in optical particle counters

- Optical particle counters are typically used in:

  – Cleanroom Monitoring

  – Air Quality Monitoring

  – Aerosol Monitoring And Research

  – Atmospheric and Climate Research

  – Combustion and Engine Research

  – Inhalation Toxicology Research

  – Operating Room Monitoring

- The Optical particle counting market is estimated to be around $276 million in 2016

- Primary competitors include:

  – Lighthouse Worldwide        – Beckman Coulter

  – Particle Measuring Systems    – Climet Instruments Company

(1) http://www.marketsandmarkets.com/Market-Reports/particle-counter-market-221564539.html

© 2018 Greyhound IP LLC

4

# OPC, Commercial applications of the IP          GREYHOUND IP

## Key Industries that Utilize Optical Particle Counters

### Healthcare

- Operating rooms
- Pharmaceuticals manufacturing

### High Tech Manufacturing

- Silicon chip manufacturing
- Hard drive manufacturing
- Flat panel manufacturing

© 2018 Greyhound IP LLC

**5**

# OPC Market Product Types

# GREYHOUND IP



Handheld devices



Portable devices

- Handheld devices

- Clean-room systems

- Portable devices

- Remote sensors



Cleanroom systems

© 2018 Greyhound IP LLC

**6**

## OPC IP Assets                                                    GREYHOUND IP

## Patent List

| Asset | Filing Date | Priority Date | Title | Status |
|-------|-------------|---------------|-------|--------|
| US6,346,983 | 1/29/1998 | 1/29/1998 | Methods and wireless communicating particle counting and measuring apparatus | Active |
| US7,439,855 | 5/13/2005 | 5/13/2005 | Method and wireless communicating apparatus for analysis of environment | Active |
| US7,573,573 | 2/13/2007 | 5/13/2005 | Method and particle measuring and counting apparatus with selectable channels of a specimen flow | Expired |
| US6,034,769 | 6/27/1997 | 6/27/199 | Method and device for counting and measuring particles | Expired |
| US5,946,091 | 4/10/1997 | 4/10/1997 | Method and device for precise counting and measuring the particles | Expired |
| US5,767,967 | 1/2/1997 | 1/2/1997 | Method and device for precise counting and measuring the particulates and small bodies | Expired |

© 2018 Greyhound IP LLC

**7**

## OPC IP, History of Litigation                    GREYHOUND IP

➤ Various combinations of these patents have been litigated against 7 defendants in 8 actions, resulting in:

- 3 adverse judgements against Yufa – each case dismissed based upon motions for summary judgement of non-infringement

- 4 stayed pending outcome of the receiver sale

- 2 patents were reexamined by the USPTO resulting in the loss of some claims and amendment of others

  – US 6,346,983

    • Claims 1-5 cancelled; Claims 6-8 patentable as amended

  – US 6,034,769 (expired)

    • Claims 2-3 cancelled; Claims 1,4,6 patentable as amended

© 2018 Greyhound IP LLC

**8**

# Vessel IP Assets                                    GREYHOUND IP

## Patent List

| Asset | Filing Date | Priority Date | Title | Status |
|-------|-------------|---------------|-------|--------|
| US5,969,665 | 1/4/1999 | 1/4/1999 | Method and apparatus for control of vessel maneuvering | Active |

© 2018 Greyhound IP LLC

*This above patent has no record of US litigation.

# Vessel Collision Detection System

## GREYHOUND IP

| Attribute | Comment |
|---|---|
| Priority Date: | 1/4/1999 |
| Technology: | Maritime collision detection |
| Market: | Maritime e-navigation |
| Expiration: | 2019 |

© 2018 Greyhound IP LLC

10

# Vessel Collision Detection, Applicability of IP

## GREYHOUND IP

> **The IP primarily relates to detecting collision risks in marine navigation software**

- **Marine navigation software is a subset of the electronic cartography market, which is estimated to be around $20 billion worldwide**

- **One technology which provides solutions that are related to the invention are Automatic Radar Plotting Aid systems, which use radar to track the speed, direction and position of potential collision risks.**

- **In 2014, the International Maritime Organization adopted a plan for the implementation of e-Navigation, defined as:**

  - *e-navigation is the harmonized collection, integration, exchange, presentation and analysis of marine information on board and ashore by electronic means to enhance berth to berth navigation and related services for safety and security at sea and protection of the marine environment.*

- **An additional relevant market is the Automated Navigation Systems market, which was estimated to be $2.8 billion in 2014**

(1) https://www.marketwatch.com/press-release/marine-navigation-systems-market-2018-global-analysis-industry-size-statistics-size-share-regional-analysis-by-key-players-and-trends-by-forecast-to-2023-2018-08-13

© 2018 Greyhound IP LLC

**11**

## Vessel Collision Detection, Commercial Applications of the IP

## GREYHOUND IP

### Key Industries that Utilize Navigation Aids

**Commercial**
- Commercial shipping

**Government**
- Military ships
- Coast guard

**Personal**
- Small craft e-navigation systems

© 2018 Greyhound IP LLC

**12**

# GREYHOUND IP



© 2018 Greyhound IP LLC

**13**

# EXHIBIT D

# S A N   F R A N C I S C O   D A I L Y   J O U R N A L
~ SINCE 1893 ~

44 MONTGOMERY ST STE 500, SAN FRANCISCO, CA 94104
Telephone (800) 640-4829 / Fax (510) 465-1657

This space for filing stamp only

MITCHELL ROSENIFELD
1638 FILBERT ST
SAN FRANCISCO, CA - 94123

SF#: 3196539

# PROOF OF PUBLICATION

(2015.5 C.C.P.)

State of    California          )
County of  SAN FRANCISCO ) ss

Notice Type:    LEGAL3 - LEGAL NOTICE-3

Ad Description:

NOTICE OF SALE BY RECEIVER

I am a citizen of the United States and a resident of the State of California; I am over the age of eighteen years, and not a party to or interested in the above entitled matter. I am the principal clerk of the printer and publisher of the SAN FRANCISCO DAILY JOURNAL, a newspaper published in the English language in the city of SAN FRANCISCO, county of SAN FRANCISCO, and adjudged a newspaper of general circulation as defined by the laws of the State of California by the Superior Court of the County of SAN FRANCISCO, State of California, under date 06/28/1990, Case Nos. 670493 and 18,469.  That the notice, of which the annexed is a printed copy, has been published in each regular and entire issue of said newspaper and not in any supplement thereof on the following dates, to-wit:

11/21/2018, 11/28/2018, 12/05/2018

Executed on: 12/05/2018
At  SAN FRANCISCO ,CA

I certify (or declare) under penalty of perjury that the foregoing is true and correct.

*Sonya Peacock*

Signature

NOTICE OF SALE BY RECEIVER
Prospective bidders should refer to Sections 701.510 to 701.680, inclusive, of the California Code of Civil Procedure for provisions governing the terms, conditions, and effect of the sale and the liability of defaulting bidders.
PLEASE TAKE NOTICE THAT, Greyhound IP LLC, solely in its capacity as the Court appointed receiver (the "Receiver") for Dr. Aleksandra Yufa, pursuant to pursuant to California Code of Civil Procedure § 567 for Case No. 09-01315 KAW entitled Yufa v. TSI Incorporated US District Court for the Northern District of California (the "Court"), to sell U.S. Patents Nos. 7,573,573 (expired); 7,439,855; 6,346,983; 6,034,769 (expired); US5,946,091 (expired) and 5,767,967 (expired) relating to optical particle counting, (collectively, the "Optical Particle Patents"), and U.S. Patent No. 5,969,665 relating to vessel collision risk detection (the "Vessel Collision Patent") (collectively, the "Yufa Portfolio"). Documents relevant to the sale are available in the virtual data room at the following link, https://www.dropbox.com/s/2of1hntuf4tmp4m/Yufa%20Portfolio%20PSA%202018-11-06.docx?dl=0 or by contacting Receiver's representative (identified below).
The Receiver received a bid from a judgement creditor in the amount of $165,525.88 (the "Stalking Horse Bid") for the Yufa Portfolio. Pursuant to the Auction Procedures (defined below), all subsequent bids must exceed $165,525.88.
Terms and Conditions of Sale. The Receiver will sell the Yufa Portfolio, pursuant to the Order Granting Defendant's Second Renewed Motion To Compel Assignments of Patents To Receiver by the Court. The Yufa Portfolio shall be transferred on an "AS IS," "WHERE IS," and "WITH ALL FAULTS" basis. THE RECEIVER MAKES NO REPRESENTATIONS OR WARRANTIES AS TO CONDITION OR FITNESS OF USE FOR OF THE PROPERTY. THE RECEIVER EXPRESSLY DISCLAIMS ALL EXPRESS AND IMPLIED WARRANTIES WITH RESPECT TO THE SALE ASSETS, INCLUDING, WITHOUT LIMITATION, THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. The winning bidder will be required to execute a patent sale agreement substantially in the form provided in the virtual data room (identified above).
The Receiver expressly reserves the right, upon notice to those parties that have demonstrated an interest in bidding on the Yufa Portfolio, to: (a) modify, waive or amend the Auction Procedure with respect to any or all potential bidders, (b) impose additional terms and conditions with respect to any or all potential bidders, and (c) cancel the sale without further notice. All inquiries regarding the Yufa Portfolio or the Auction Procedures should be directed to the auction representative for the Receiver, Kevin Mulroy, Intellectual Property Trade Pte Ltd, (415) 418-3148 (telephone), kevin@iptrade.net (email), Auction Procedure. Parties interested in participating in the telephonic auction

Email

*A00000493 2530*

EXHIBIT D

should provide notice by email to
kevin@iptrade.net before 5:00 pm PST on
December 18, 2018 to receive detailed
bidding instructions. For those parties
providing notice, the auction will be held
via a conference call on December 20th at
9:00 am PST.
11/21, 11/28, 12/5/18

**SF-3196539#**

# EXHIBIT E

# SMALL BUSINESS EXCHANGE

# PROOF OF PUBLICATION
(2015.5 C.C.P)

STATE OF CALIFORNIA, SS
County of San Francisco

I am a citizen of the United States and a resident of the County aforesaid.  I am over the age of eighteen years, and not a party to or interested in the above matter.  I am the principal clerk of the printer and publisher of The Small Business Exchange, Inc., a newspaper of general circulation printed and published weekly in the City and County of San Francisco, State of California on the date of January 29, 1988, that the notice of which the annexed is a printed copy (set in type not smaller than non pareil), has been published in the **Small Business Exchange** on the following date(s), to wit:

_____    _____    _____    _____

_____    _____    _____    _____

_____    _____    _____    _____

_____    _____    _____    _____

I declare under penalty of perjury that the foregoing is true and correct.

Executed on _____ at  San Francisco, California.

_____ NABIL V.
(Signature)

_____ Insertion #

| **Corporate Office** |
| 795 Folsom Street, 1st Floor • San Francisco, CA 94107-4226 |
| Phone (415) 778-6250 • Toll Free (800) 800-8534 |

Proof of Publication - SBE Newspaper

**EXHIBIT E**

# Public Legal Notices



**CITY & COUNTY OF SAN FRANCISCO DEPARTMENT OF PUBLIC WORKS**

**Contract No. 1000009388**
**750 BRANNAN STREET**
**STORAGE FACILITY**

Sealed bids will be received at 1155 Market Street, 4th Floor, San Francisco, California 94103 until **2:30:00 p.m. on December 5, 2018**, after which they will be publicly opened and read. Digital files of Bid Documents, Plan Holders Lists, and Addenda may be downloaded at no cost from the Public Works Electronic Bid Documents Download site at www.sfpublicworks.org/biddocs. Please visit the Contracts, Bids and Payments webpage at www.sfpublicworks.org for more information (click on Resources > Contractor Resources). Notices regarding Addenda and other bid changes will be distributed by email to Plan Holders.

The work to be done under this contract is located at 750 Brannan Street, San Francisco, California, all as shown on the drawings and as specified in these Specifications. Scope of work to include limited demolition and the installation of new mechanical units and new mobile storage units. Work to include minor interior and exterior upgrades to support the mechanical and storage units, including electrical work. Work also includes the enhancement of building access through a concrete ramp and equipment pads for new mechanical units. The time allowed for completion is 180 consecutive calendar days. The Engineer's estimate is approximately $1,600,000. For more information, contact the Project Manager, **Julia Groat** at 415-557-4613.

**On July 1, 2014, the registration program under section 1725.5 of the California Labor Code went into effect. The program requires that all contractors and subcontractors who bid or work on a public works project register and pay an annual fee to the California Department of Industrial Relations ("DIR").**

**No contractor or subcontractor may be listed in a bid or awarded a contract for a public works project unless registered with the DIR as required by Labor Code section 1725.5 [with limited exceptions from this requirement for bid purposes only under Labor Code section 1771.1(a)].**

This Project shall incorporate the required partnering elements for Partnering Level 1. Refer to Section 01 31 33 for more details.

Pursuant to San Francisco Administrative Code ("Administrative Code") Section 6.25 and Chapter 25 of the Environment Code, "Clean Construction" is required for the performance of all work.

This Contract is subject to the requirements of Administrative Code Chapter 12X, which prohibits the City from entering into any Contract with a Contractor that has its United States headquarters in a state with laws that perpetuate discrimination against LGBT populations ("Covered State") or where any or all of the work on the contract will be performed in any of those states. A list of states on the Covered State List can be found at: https://oag.ca.gov/ab1887.

The Specifications include liquidated damages. Contract will be on a Lump Sum Bid Items basis. Progressive payments will be made.

The Contract will be awarded to the lowest responsible responsive bidder.

A bid may be rejected if the City determines that any of the bid item prices are materially unbalanced to the potential detriment of the City.

Bid discounts may be applied as per Administrative Code Chapter 14B. LBE Subcontracting Participation Requirement is **5%**. Call Lupe Arreola at 415-558-4059 for details. In accordance with Administrative Code Chapter 14B requirements, all bidders shall submit documented good faith efforts with their bids,

except those who exceed the above stated LBE Subcontracting Participation Requirement by 35%. Bidders must achieve 80 out of 100 points to be deemed responsive. Bidders will receive 15 points for attending the pre-bid conference, if scheduled. Refer to CMD Form 2B.

A pre-bid conference will be held on **November 19, 2018 at 1:00 p.m.** at 750 Brannan Street, San Francisco, CA 94103.

For information on the City's Surety Bond and Finance Program, call 415-986-3999 or bond@imwis.com.

A corporate surety bond or certified check for ten percent (10%) of the amount bid must accompany each bid. Administrative Code Section 6.22(a) requires all construction greater than $25,000 to include performance and payment bonds at 100% of the contract award.

**Class "B"** license required to bid.

In accordance with Administrative Code Chapter 6, no bid is accepted and no contract in excess of $600,000 is awarded by the City and County of San Francisco until such time as the Mayor or the Mayor's designee approves the contract for award, and the Director of Public Works then issues an order of award. Pursuant to Charter Section 3.105, all contract awards are subject to certification by the Controller as to the availability of funds.

Minimum wage rates for this project must comply with the current General Prevailing Wage as determined by the State Department of Industrial Relations. Minimum wage rates other than applicable to General Prevailing Wage must comply with Administrative Code Chapter 12P, Minimum Compensation Ordinance.

This Project is subject to the requirements of the San Francisco Local Hiring Policy for Construction ("Policy") as set forth in Administrative Code Section 6.22(g). Bidders are hereby advised that the requirements of the Policy will be incorporated as a material term of any contract awarded for the Project. Refer to Section 00 73 30 of the Project Manual for more information.

Bidders are hereby advised that the Contractor to whom the Contract is awarded must be certified by the Contract Monitoring Division as being in compliance with the Equal Benefits Provisions of Chapter 12B of the Administrative Code within two weeks after notification of award.

If a bidder objects on any ground to any bid specification or legal requirement imposed by this Advertisement for Bids, the bidder shall, no later than the 10th working day prior to the date of Bid opening, provide written notice to the Contract Administration Division, San Francisco Public Works, setting forth with specificity the grounds for the objection.

Right reserved to reject any or all bids and waive any minor irregularities.

11/21/18
CNS-3194947#
**SMALL BUSINESS EXCHANGE**

---

**NOTICE OF SALE BY RECEIVER**

**Prospective bidders should refer to Sections 701.510 to 701.680, inclusive, of the California Code of Civil Procedure for provisions governing the terms, conditions, and effect of the sale and the liability of defaulting bidders.**

PLEASE TAKE NOTICE THAT, Greyhound IP LLC, solely in its capacity as the Court appointed receiver (the "Receiver") for Dr. Aleksandra Yufa, pursuant to a California Code of Civil Procedure § 567 for Case No. 09-01315 KAW entitled Yufa v. TSI Incorporated US District Court for the Northern District of California (the "Court"), to sell U.S. Patents Nos. 7,573,573 (expired); 7,439,855; 6,346,983; 6,034,769 (expired); US$,946,091 (expired) and 5,767,967 (expired) relating to optical particle counting, (collectively, the "Optical Particle Patents"), and U.S. Patent No. 5,969,665 relating to vessel collision risk detection (the "Vessel Collision Patent") (collectively, the "Yufa Portfolio"). Documents relevant to the sale are available in the virtual data room at the following link, https://www.dropbox.com/s/2of1hntuf4tmp4m/Yufa%20Portfolio%20PSA%202018-11-06.docx?dl=0 or by contacting Receiver's representative (identified below).

The Receiver received a bid from a judgement creditor in the amount of $165,525.88 (the "Stalking Horse Bid") for the Yufa Portfolio. Pursuant to the Auction Procedures (defined below), all subsequent bids must exceed $165,525.88.

**Terms and Conditions of Sale.** The Receiver will sell the Yufa Portfolio, pursuant to the Order Granting Defendant's Second Renewed Motion To Compel Assignments Of Patents To Receiver by the Court. The Yufa Portfolio shall be transferred on an "AS IS," "WHERE IS," and "WITH ALL FAULTS" basis. THE RECEIVER MAKES NO REPRESENTATIONS AND WARRANTIES AS TO CONDITION OR FITNESS OF USE FOR OF THE PROPERTY. THE RECEIVER EXPRESSLY DISCLAIMS ALL EXPRESS AND IMPLIED WARRANTIES WITH RESPECT TO THE SALE ASSETS, INCLUDING, WITHOUT LIMITATION, THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. The winning bidder will be required to execute a patent sale agreement substantially in the form provided in the virtual data room (identified above).

The Receiver expressly reserves the right, upon notice to those parties that have demonstrated an interest in bidding on the Yufa Portfolio, to: (a) modify, waive or amend the Auction Procedure with respect to any or all potential bidders, (b) impose additional terms and conditions with respect to any or all potential bidders, and (c) cancel the sale without further notice. All inquiries regarding the Yufa Portfolio or the Auction Procedures should be directed to the auction representative for the Receiver, Kevin Mulroy, Intellectual Property Trade Pte Ltd, (415) 418-3148 (telephone), kevin@iptrade.net (email).

**Auction Procedure.** Parties interested in participating in the telephonic auction should provide notice by email to kevin@iptrade.net before 5:00 pm PST on December 18, 2018 to receive detailed bidding instructions. For those parties providing notice, the auction will be held via a conference call on December 20th at 9:00 am PST.

---

# 5 Ways CEOs Can Change Their Behaviors To Lead More Efficiently

*By Mark Green,*

In business, the adage "it starts at the top" can prompt an uncomfortable question: "Can the boss finish what he or she started?"

Many CEOs and entrepreneurs wrestle with this challenge, with both short- and long-term implications. Meanwhile, a disconnect develops between the CEO's initial big-picture vision for the company and its seemingly sporadic execution toward those goals.

The Global Leadership Forecast 2018 highlights issues of greatest concern to CEOs; among them is a lack of alignment among senior leaders. The last problem any CEO wants is an inability to get everyone on the same page, aligned and executing their strategy.

"I've witnessed CEOs struggle with this question: 'Why is it so difficult to execute what I already know I should be doing?'" says Mark E. Green, a speaker, coach to CEOs and author of Activators: A CEO's Guide to Clearer Thinking and Getting Things Done (www.Activators.biz). "They and their teams generally know what to do and how to get it done. But they avoid the decisions and actions they know could advance their success.

"All roads lead back to obstacles within your mind. New behaviors leading to execution require new ways of thinking."

Green lists five ways for CEOs to change behaviors that obstruct them from leading their company efficiently and effectively:

- **If/when, then.** Green points to a study on influencing behavior by German researchers, who found that formulating an "if/when, then" plan – stating a specific time to accomplish a task – provided a cue to provoke the desired response. "I've worked with many CEOs who were not classically trained in accounting and finance and are overwhelmed by numbers," Green says. "Such fears drove them to avoid financial information and reports. Making an if/when, then statement compels them to change the behavior."

- **Relate and repeat.** To change, one needs to believe that change is possible. "Cultivate relationships with those who can help you see that the change you desire is attainable," Green says. "Then repeat by testing out the new behavior or thought pattern and seeking feedback."

- **Know when to say no.** As the company leader, being a giver is important – but not to the point where sacrifice damages your own performance. "Credible research shows that high-performing givers knew when to say no," Green says. "Track your yes-to-no ratio. It's the only way to protect your time, energy, and focus as a leader.

■ Continued on page 8

# EXHIBIT F

# *The* BAY AREA REPORTER

PROOF OF PUBLICATION

**PROOF OF PUBLICATION**

**CITY AND COUNTY OF SAN FRANCISCO**
**STATE OF CALIFORNIA**

I am a citizen of the United States and a resident of the City and County of San Francisco, State of California. I am over the age of eighteen years and I am not a party to or interested in the matter of which this is a Proof of Publication. I am the circulation manager of the *Bay Area Reporter,* a newspaper of general circulation which is printed and published in San Francisco. The *Bay Area Reporter* was adjudged a newspaper of general circulation by the Presiding Judge of the Superior Court of San Francisco County, State of California, on January 28, 1987. The notice affixed to this page is a printed copy which was published in the regular issue of the *Bay Area Reporter* on:

**NOV 22, 2018**

I certify (or declare) under penalty of perjury that the foregoing is true and correct.

Dated in San Francisco, California on:

**NOV 22, 2018**

MICHAEL YAMASHITA
Signature

**NOTICE OF SALE BY RECEIVER**

Prospective bidders should refer to Sections 701.510 to 701.680, inclusive, of the California Code of Civil Procedure for provisions governing the terms, conditions, and effect of the sale and the liability of defaulting bidders.

PLEASE TAKE NOTICE THAT, Greyhound IP LLC, solely in its capacity as the Court appointed receiver (the "Receiver") for Dr. Aleksandra Yufa, pursuant to pursuant to California Code of Civil Procedure § 567 for Case No. 09-01315 KAW entitled Yufa v. TSI Incorporated US District Court for the Northern District of California (the "Court"), to sell U.S. Patents Nos. 7,573,573 (expired); 7,439,855; 6,346,983; 6,034,769 (expired); US5,946,091 (expired) and 5,767,967 (expired) relating to optical particle counting, (collectively, the "Optical Particle Patents"), and U.S. Patent No. 5,969,665 relating to vessel collision risk detection (the "Vessel Collision Patent") (collectively, the "Yufa Portfolio"). Documents relevant to the sale are available in the virtual data room at the following link, https://www.dropbox.com/s/2of1hntuf4tmp4m /Yufa%20Portfolio%20PSA%202018-11-06.docx?dl=0 or by contacting Receiver's representative (identified below).
The Receiver received a bid from a judgement creditor in the amount of $165,525.88 (the "Stalking Horse Bid") for the Yufa Portfolio. Pursuant to the Auction Procedures (defined below), all subsequent bids must exceed $165,525.88.
Terms and Conditions of Sale. The Receiver

**EXHIBIT F**

will sell the Yufa Portfolio, pursuant to the Order Granting Defendant's Second Renewed Motion To Compel Assignments Of Patents To Receiver by the Court. The Yufa Portfolio shall be transferred on an "AS IS," "WHERE IS," and "WITH ALL FAULTS" basis. THE RECEIVER MAKES NO REPRESENTATIONS OR WARRANTIES AS TO CONDITION OR FITNESS OF USE FOR OF THE PROPERTY. THE RECEIVER EXPRESSLY DISCLAIMS ALL EXPRESS AND IMPLIED WARRANTIES WITH RESPECT TO THE SALE ASSETS, INCLUDING, WITHOUT LIMITATION, THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. The winning bidder will be required to execute a patent sale agreement substantially in the form provided in the virtual data room (identified above). The Receiver expressly reserves the right, upon notice to those parties that have demonstrated an interest in bidding on the Yufa Portfolio, to: (a) modify, waive or amend the Auction Procedure with respect to any or all potential bidders, (b) impose additional terms and conditions with respect to any or all potential bidders, and (c) cancel the sale without further notice. All inquiries regarding the Yufa Portfolio or the Auction Procedures should be directed to the auction representative for the Receiver, Kevin Mulroy, Intellectual Property Trade Pte Ltd, (415) 418-3148 (telephone), kevin@iptrade.net (email). Auction Procedure. Parties interested in participating in the telephonic auction should provide notice by email to kevin@iptrade.net before 5:00 pm PST on December 18, 2018 to receive detailed bidding instructions. For those parties providing notice, the auction will be held via a conference call on December 20th at 9:00 am PST.

NOV 22, 2018

44 GOUGH STREET, #204, SAN FRANCISCO, CALIFORNIA 94103 ◻ 415 861 5019

# EXHIBIT G

# U.S. Postal Service
# CERTIFIED MAIL® RECEIPT
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com*®.

COLTON, CA 92324

OFFICIAL USE

Certified Mail Fee **$3.45**

$ **$0.00**

Extra Services & Fees *(check box, add fee as appropriate)*
- ☐ Return Receipt (hardcopy)    $ **$0.00**
- ☐ Return Receipt (electronic)    $ **$0.00**
- ☐ Certified Mail Restricted Delivery    $ **$0.00**
- ☐ Adult Signature Required    $ **$0.00**
- ☐ Adult Signature Restricted Delivery    $ _____

Postage **$0.50**

$

Total Postage and Fees **$3.95**

$

Postmark Here

0052
09

NOV 16 2018

SAN FRANCISCO CA SUTTER ST 94104
USPS

11/19/2018

Sent To **Aleksandr L Yufa**

Street and Apt. No., or PO Box No. **698 Cypress Ave.**

City, State, ZIP+4® **Colton, CA 92324-1952**

PS Form 3800, April 2015 PSN 7530-02-000-9047    See Reverse for Instructions

**EXHIBIT G**

7018 1830 0001 6287 8552

# EXHIBIT H

DRAFT

## PATENT ASSIGNMENT AGREEMENT

This Patent Assignment Agreement including all schedules and appendices attached hereto (this "*Agreement*") is entered into _____(the "*Effective Date*"), by and between Greyhound IP LLC, a Colorado limited liability company with a mailing address of 1638 Filbert Street, San Francisco, CA 94123 ("*Seller*"), and ____, Inc., a ____ corporation with its principal place of business at _____. ("*Purchaser*").   Hereinafter, Seller and Purchaser are each referred to as a "*Party*", and collectively as the "*Parties*".

### RECITALS

**WHEREAS**, as the receiver appointed by the U.S. District Court for the Northern District of California in *Case No. 09-01315 KAW entitled Yufa v. TSI Incorporated* (hereinafter, the "Court")*,* Seller owns certain patent assets assigned to Seller by Dr. Aleksandra Yufa on October 1, 2018 and wishes to assign and transfer to Purchaser all right, title, and interest in such patent assets; and

**WHEREAS**, Purchaser wishes to purchase from Seller all right, title, and interest in such patent assets.

**NOW, THEREFORE,** in consideration of the promises and performance of the terms and conditions contained in this Agreement, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereby agree as follows:

### SECTION 1
### DEFINITIONS

       (i)       "*Assigned Patents*" means United States Patent Nos. 7,573,573; 7,439,855; 6,346,983; 6,034,769; 5,969,665; 5,946,091; and 5,767,967.

       (ii)       "*Payment Date*" means the day on which Purchaser makes all payments to Seller set forth in Section 3.1.

       (iii)       "*Court Confirmation Date*" means the day of Court Confirmation set forth in Section 2.3.

### SECTION 2
### TRANSFER OF PATENTS

2.1.    Assigned Patents.  In consideration of, and subject to, the payment pursuant to Section 3.1 hereof, Seller hereby agrees to assign, transfer, and convey, to Assignee, the entire and

28893.1

EXHIBIT H

DRAFT

exclusive right, title and interest in and to the Assigned Patents and any reexaminations or reissues, continuations, continuation-in-parts, or divisional applications related to, and/or that derive priority from, the Assigned Patents, or foreign counterparts thereof, including, without limitation, the rights to sue for past, present, and future infringement, the right to collect royalties, fees, payments, and damages of any kind, in any legal action or proceeding, based on the Assigned Patents, now or later due or payable, whether known or unknown, currently pending or otherwise, and the right to seek injunctive relief (hereinafter "***Assigned Patent Rights***"). For the sake of clarity, the Assigned Patent Rights are consistent with and no broader than that which was conveyed to Seller by Dr. Aleksandra Yufa on October 1, 2018 set forth in Schedule A .

2.2.     <u>Delivery, Closing and Recordation</u>.   Seller shall execute and deliver to Purchaser an executed copy of the patent transfer documents, in the form of Schedule B, (hereinafter "***Transfer Documents***") via e-mail and an original via U.S. mail within (5) business days following the later of the Payment Date and the Court Confirmation Date.

2.3.     <u>Court Confirmation</u>.   The Parties acknowledge that the transfer of the Assigned Patent Rights is subject to Court approval pursuant to California Code, Code of Civil Procedure § 568.5 (hereinafter "***Court Confirmation***").

**SECTION 3**
**CONSIDERATION**

3.1.     <u>Payment</u>.   As consideration for the Assigned Patent Rights and Seller's full performance of its obligations under this Agreement, Purchaser shall pay Seller _____ ($_____) U.S. dollars (hereinafter "***Consideration***") as follows: ten percent (10%) of the Consideration (hereinafter "***Deposit***") within five (5) calendar days after the Effective Date and the remainder within five (5) calendar days after the Court Confirmation Date.   In the event of a final order by the Court declining to confirm the transfer under this Agreement pursuant to California Code, Code of Civil Procedure § 568.5, Seller shall refund the Deposit within ten (10) calendar days.   Except as expressly provided herein any payment made hereunder is non-refundable.   If an applicable law, regulation, or binding rule imposes upon Purchaser some procedures or requirements with respect to its payment to Seller hereunder, Purchaser shall complete all such necessary procedures or requirements at Purchaser's sole expense with Seller's reasonable assistance.

3.2.     <u>Payment Method</u>.   Any payment to be made by Purchaser to Seller under this Agreement shall be in United States Dollars to the following bank account of Seller.   Purchaser shall be responsible for any wire transfer fee.

DRAFT

Bank
Office
Bank Address
Accountholder
Accountholder's
Address
Account Number
Swift Code

3.3.    Taxes.    Any payment due hereunder is exclusive of all local fees, taxes, duties, or banking charges of any kind, none of which shall be deducted, and Purchaser shall be responsible for all fees, taxes, duties, and banking charges relating to the purchase of the Assigned Patent Rights. Purchaser shall use its commercially reasonable efforts to ensure that there is no deduction or withholding of any taxes, levies or other imposts, imposed on any payments to Seller.

3.4.    Failure of Payment.    Notwithstanding anything herein to the contrary, if Purchaser fails to make any payments provided in Section 3.1 by the Payment Date, Seller shall have the right to rescind this Agreement in Seller's sole discretion and to render the transfer of the Assigned Patent Rights or other grant or acceptance of any rights or obligations under this Agreement null and void with written notice to Purchaser unless Purchaser cures such breach within ten (10) calendar days.

## SECTION 4
## REPRESENTATIONS AND WARRANTIES OF SELLER

THE ASSIGNED PATENT RIGHTS ARE SOLD AND ASSIGNED ON A STRICTLY "AS-IS" BASIS, AND SELLER MAKES NO OTHER REPRESENTATIONS, WARRANTIES, OR COVENANTS OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING WITHOUT LIMITATION ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, OR ANY REPRESENTATION, WARRANTY, OR COVENANT THAT THE PRACTICE OF ANY INVENTION CLAIMED IN AN ASSIGNED PATENT WILL NOT INFRINGE ANY OTHER PATENT THAT IS OR WAS AT THE TIME OWNED BY SELLER, NOR SHALL SELLER HAVE ANY LIABILITY WITH RESPECT TO INFRINGEMENT BY PURCHASER OF PATENTS OR OTHER RIGHTS OF THIRD PARTIES. SELLER ASSUMES NO RESPONSIBILITIES WHATSOEVER WITH RESPECT TO THE MANUFACTURE, USE, SALE OR OTHER DISPOSITION OF ANY OF PURCHASER'S OR ANY THIRD PARTIES' PRODUCTS, PROCESSES, METHODS OR SERVICES BASED ON ANY OF THE ASSIGNED PATENT RIGHTS.

## SECTION 5
## REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser hereby represents and warrants to Seller as of the Effective Date as follows:

DRAFT

5.1.    <u>Corporate Organization</u>.    Purchaser is a corporation duly organized, validly existing and, to the extent applicable, in good standing under its respective laws of its incorporation, is duly qualified and, to the extent applicable, is in good standing under the laws of each jurisdiction in which the character of the properties and assets now owned or held by it or the nature of the business now conducted by it requires it to be so licensed or qualified.    Purchaser has full corporate power and authority to carry on its business as now being conducted.

5.2.    <u>Authority</u>.    Purchaser has full corporate power and authority to execute and deliver this Agreement and to perform its obligations hereunder.    The execution and delivery of this Agreement by Purchaser and the performance by Purchaser of its obligations hereunder have been duly authorized by all necessary corporate action.    This Agreement has been duly executed and delivered by Purchaser and constitutes the legal, valid and binding obligation of Purchaser, enforceable against it in accordance with its terms, subject to applicable laws affecting creditors' rights generally and, as to enforcement, to general principles of equity, regardless of whether applied in a proceeding at law or in equity.

## SECTION 6
## OTHER COVENANTS OF SELLER

6.1.    <u>Cooperation; No Future Responsibility</u>.    Seller shall have no responsibility for any legal action or proceeding relating to any of the Assigned Patent Rights that is commenced on or after the Effective Date.

## SECTION 7
## OTHER COVENANTS OF PURCHASER

7.1.    <u>Fees and Other Actions</u>.    Any costs for any patent office proceedings taken on or after the Effective Date by Purchaser, the cost of recording the transfer of the Assigned Patent Rights, including any maintenance fees, annuities, renewal fees, issue fees and the like due on the Assigned Patent Rights, and any and all other costs regarding the Assigned Patent Rights shall be borne solely by Purchaser.

7.2.    <u>Continuation of Prior Licenses</u>.    Purchaser, on behalf of itself, its Subsidiaries, and their successors and assigns, acknowledges that: (i) Purchaser's acquisition of the entire right, title, and interest in and to the Assigned Patent Rights pursuant to this Agreement is subject to any and all outstanding licenses, options to acquire licenses, or other rights existing in third parties under agreements executed by Seller prior to the Effective Date of this Agreement (hereinafter "***Prior Licenses***"), all of which shall run with the Assigned Patent Rights and shall remain in full force and effect in accordance with their terms in effect as of the Effective Date.

## SECTION 8
## MISCELLANEOUS

**DRAFT**

8.1.    Notices.    All notices under this Agreement shall be in writing, specifically refer to this Agreement, and be delivered in person or sent by international carrier or overnight mail, by telecopy, or by other means providing proof of delivery, to the Parties at their respective addresses set forth below, or to any other address of which a Party notifies the other.    Other communications under this Agreement may be made by any of the foregoing means as well as electronic mail to an e-mail address designated by a Party.    All notices shall be deemed effective on the date of actual receipt or five (5) calendar days after transmission as provided above, whichever is sooner.

|  |  |
|---|---|
| IF TO SELLER: | IF TO PURCHASER: |
| Greyhound IP LLC | |
| Attention: Mitchell Rosenfeld | Attention: |
| 1638 Filbert Street | |
| San Francisco, CA 94123 | |
| Email: mitch@greyhoundip.com | Email: |

8.2.    Assignment of this Agreement.    Except as expressly provided in this Agreement, neither Party shall assign this Agreement, or any of its rights or obligations hereunder, without the prior written consent of the other Party, and any assignment or attempted assignment of this Agreement or any part thereof by a Party without the prior written consent of the other Party shall be void.

8.3.    Construction.    Each of the Parties and their respective counsel has participated in the negotiation and drafting of this Agreement, and have had an opportunity to review this Agreement. For purposes of this Agreement, whenever the context requires: (i) the singular number includes the plural, and vice versa; the masculine gender includes the feminine and neuter genders; the feminine gender includes the masculine and neuter genders; and the neuter gender includes the masculine and feminine genders; (ii) in the event that any ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by all Parties and no rule of construction, presumption or burden of proof shall arise favoring one Party concerning construction or interpretation of ambiguous provisions, terms or otherwise by virtue of one Party's presumed authorship of this Agreement or any provision thereof; and (iii) the words "include" and "including" and variations thereof, will not be deemed to be terms of limitation, but rather will be deemed to be followed by the words "without limitation."

8.4.    Entire Agreement.    This Agreement, including all schedules and appendices, constitutes the complete and final agreement between the Parties, and supersedes all prior and contemporaneous negotiations and agreements between the Parties concerning its subject matter.

8.5.    Amendment; Waiver.    This Agreement may not be altered, modified or waived in whole or in part, except in writing, signed by duly authorized representatives of the Parties.    No waiver of any term or condition of this Agreement, whether by conduct or otherwise, in any one or more instances, shall be deemed to be a further or continuing waiver of that term or condition or a

**DRAFT**

waiver of any other term or condition.   The interpretation of this Agreement may not be explained or supplemented by any course of dealing or performance, or by usage of trade.

8.6.   <u>English Language</u>.   This Agreement is made in English, and as such the original English version of this Agreement shall prevail and govern any translation or retranslation.   The titles and headings used in this Agreement are intended as a convenience only, and shall not affect the interpretation of its provisions.

8.7.   <u>Relationship of the Parties</u>.   The Parties are separate and independent legal entities. Nothing in this Agreement shall constitute a partnership nor make either Party the agent or representative of the other.   Neither Party has the authority to bind the other or to incur any liability on behalf of the other, nor to direct the employees of the other.   Neither Party shall hold itself out contrary to the terms of this paragraph.   Neither Party shall be liable for the representations, acts, or omissions of the other Party contrary to the terms of this Agreement.

8.8.   <u>Jurisdiction, Venue and Governing Law</u>.   This Agreement shall be governed by and construed in accordance with the substantive laws, but not the choice of law rules, of the State of California and the applicable federal laws of the United States.

8.9.   <u>Limitation of Liability</u>.   THE MAXIMUM LIABILITY OF A PARTY FOR ANY DAMAGES RELATED TO THIS AGREEMENT SHALL NOT EXCEED THE PAYMENT SELLER RECEIVES FROM PURCHASER SET FORTH IN SECTION 3.1 OF THIS AGREEMENT. SELLER SHALL NOT BE LIABLE FOR ANY OTHER MONETARY DAMAGES FOR ANY BREACH OR ALLEGED BREACH OF THIS AGREEMENT OTHER THAN AS SET FORTH ABOVE.   NO PARTY, NOR ANY OF THEIR RESPECTIVE AFFILIATES, SHALL BE LIABLE TO ANY OTHER PARTY FOR ANY INDIRECT OR SPECIAL, CONSEQUENTIAL, EXEMPLARY, PUNITIVE OR INCIDENTAL DAMAGES OF ANY KIND OR NATURE WHATSOEVER, HOWEVER CAUSED, ARISING OUT OF THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY, INCLUDING, WITHOUT LIMITATION, LOST PROFITS OR LOST GOODWILL AND WHETHER BASED ON BREACH OF ANY EXPRESS OR IMPLIED WARRANTY, BREACH OF CONTRACT, TORT (INCLUDING NEGLIGENCE) OR STRICT LIABILITY, REGARDLESS OF WHETHER SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGE OR IF SUCH DAMAGE COULD HAVE BEEN REASONABLY FORESEEN.

8.10.   <u>Severability</u>.   If any provision of this Agreement is found or held to be unenforceable or invalid by any legally governing authority having jurisdiction over either Party, the provision shall be severed and the remainder of this Agreement shall be valid and enforceable.   The Parties shall negotiate in good faith a substitute provision that most nearly affects the Parties' original intent.

8.11.   <u>Counterparts</u>.   This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same agreement.

[The remainder of this page has been intentionally left blank.   Signature page follows]

<span style="color:red">**DRAFT**</span>

      **IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed by its duly authorized representative.

Greyhound IP LLC


By:      _____

Name: _____

Title:    _____

Date:    _____




[BUYER]


By:      _____

Name: _____

Title:    _____

Date:    _____

**DRAFT**

## SCHEDULE A

**[ATTACH NOTICE OF FILING OF PATENT ASSIGNMENT AND ASSIGNMENT]**

**DRAFT**

## SCHEDULE B

## TRANSFER DOCUMENTS

ASSIGNMENT

This Assignment is made by Greyhound IP LLC, a Colorado limited liability company, ("Greyhound IP") as receiver in connection with post-judgment proceedings in the civil action Yufa v. TSI Incorporated, Case No. 4:09-cv-01315-KAW (N.D. Cal. filed Mar. 25, 2009) in favor of _____ ("Assignee").

WHEREAS, Greyhound IP, is the owner of all right, title, and interest to United States Patent Nos. 7,573,573; 7,439,855; 6,346,983; 6,034,769; 5,969,665; 5,946,091; and 5,767,967 ("the Patents");

WHEREAS, on September 4, 2014, the United States District Court for the Northern District of California ("the Court") entered judgment against Dr. Aleksandra Yufa in favor of TSI Incorporated in the amount of $166,364.88 ("the Judgment");

WHEREAS, the Court appointed Greyhound IP as receiver to value, and then sell, the Patents to satisfy the Judgment;

AND WHEREAS, the Court ordered Dr. Yufa to assign the Patents to Greyhound IP in order for Greyhound IP to execute a sale of the Patents to satisfy the Judgment, and Dr. Yufa did so assign the Patents on October 1, 2018;

NOW, THEREFORE, Greyhound IP, in furtherance of his obligation to satisfy the Judgment, hereby assigns, transfers, and conveys, to Assignee, the entire and exclusive right, title and interest in and to the Patents and any reexaminations or reissues, continuations, continuation-in-parts, or divisional applications related to, and/or that derive priority from, the Patents, or foreign counterparts thereof, including, without limitation, the rights to sue for past, present, and future infringement, the right to collect royalties, fees, payments, and damages of any kind, in any legal action or proceeding, based on the Patents, now or later due or payable, whether known or unknown, currently pending or otherwise, and the right to seek injunctive relief.

IN TESTIMONY WHEREOF, I have hereunto set my hand this _____ day of _____, 2018.

_____

Mitchell S. Rosenfeld

Managing Director

Greyhound IP LLC

**DRAFT**

STATE OF _____ )

) ss.

COUNTY OF _____ )

On this _____ day of _____, 2018 before me personally appeared

_____, to be known and known to me to be the person described in and who

executed the foregoing instrument, and he duly acknowledged to me that he executed the same

for the uses and purposes therein set forth.


_____

Notary Public